82 93
95 131

Case 14—WILL—May 2, 1884.

# Porschet v. Porschet.

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. The mere fact that the testator devised all his estate to a woman with whom he lived as his wife, when she was in fact the lawful wife of another, will not authorize the court to instruct the jury that the law presumes undue influence on the part of the devisee, and that, in the absence of any proof to the contrary, they must find against the will.

2. If the will be the offspring of a sound mind and disposing memory; although he devises all his property, to the exclusion of his brother and sister, to a person not his wife, it must be shown that undue influence has been exercised, in some manner, upon the testator, or else the will must be sustained. Undue influence can not be presumed, although the act of cohabitation is unlawful.

·STOSSMEISTER, ROOT AND HAWKINS, AND W. LINDSAY
FOR APPELLANT.

The paper in contest was procured by the undue influence of the appellee,
and the jury should have so decided, even if the true relation which
existed between the parties had been known to the testator at the time
of its execution.

The simple fact that the testator bore an unlawful relation to appellee cre-
·ates the presumption of undue influence on her part, and the jury
should have been so instructed.

·(Redfield on Wills, vol. 1, 352, 529; 21 Ga., 552; Dean v. Negley, 41
Pa. St. Rep., 312.)

NELSON & WASHINGTON FOR APPELLEES.

If, as is claimed by appellants, the influence that produced the will
was illegal only because it sprang from an unlawful relation, then
the principle would be applicable to any other unlawful relation,
and would destroy a will made under influences springing therefrom,
although the testator, without being under restraint, could not be
persuaded to make a will otherwise than as prompted by such in-
fluence.

There is no proof of improper influence, and the court properly instructed
the jury that the mere fact that the relations between the devisor and
appellee are unlawful is insufficient to authorize the jury to find
against the will.

There must be proof of actual influence unduly used.

(Wise, &c., v. Foote, &a., January Term, 1883; 1 Bush, 123; 10 Bush,
304; 13 Bush, 169; Ib., 452; Ib., 652; 25 N. Y., 9; 34 N. Y., 991;
68 N. Y., 148; 26 Ver., 38; 35 Ver., 238; 42 Ills., 376; 90 Ills.,
134; 2 Heis., Tenn., 250; 17 Ohio St., 302; Cheves Rep., S. C., 37;
1 Rich. Rep., S. C., 80; 26 Wis., 104; 15 N. J. Ch., 343; 24 N. J;
Eq. Rep., 431; 70 N. Y., 387; 20 Pa. St., 329; 41 Pa. St., 312; 43
Pa. St., 46; 65 Pa. St., 368; 69 Pa. St. 177; 34 Pa. St., 217; 89 Pa.
St., 220; 37 Ind., 343-4; Redf. Am. Will Cases, 417; 1 Redf. on
Wills, p. 522, 526, and notes; 2 Gr. Ev., sec. 688.)

·JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The will in controversy was admitted to probate by
the county court as the last will of John L. Porschet,
·and, on an appeal to the circuit court, the same result
followed, and from the judgment in that court the
brother of the testator, who is the only party contest-
·ing the validity of that paper, has appealed to this
·court.

The testimony in the case leaves no doubt as to the mental capacity of the testator to create such a paper, and the ground relied on for defeating the probate is the alleged undue influence of the devisee in procuring the devise in her favor.

The will was executed some three years prior to the testator's death, in the absence of the sole devisee, and was written by an attorney who knew the testator well, and this legal adviser, together with his family physician, as well as others, testify that the devisor had full possession of his mental faculties at the date of the paper and long after, the physician testifying that he retained full possession of his mental power up to the day of his death.

When the will had been executed, the attorney writing it sealed it up in a large envelope and handed it to the devisor, and after death it was found sealed in the same envelope, and opened for the first time in the office of the county judge. The testator talked to his attorney before and after he made the will as to his property, and he at no time expressed a desire to make any other disposition of his estate than as found in the will in question.

The devisor and the devisee were both Germans, advanced in years, and had lived together as man and wife for eight or ten years prior to the death of the testator. The marriage ceremony was solemnized in the usual form, and the testator no doubt believed at the time that there was no impediment to the marriage, but it was developed that Mrs. Porschet had married one Beck, from whom she had separated, and several years thereafter married the testator without having

obtained a divorce from Beck. There is proof con-
ducing to show that the testator ascertained after the
marriage that his supposed wife had a living husband
at the time of his marriage with her, and, on the other
hand, it is attempted to be shown that this fact was
concealed from the testator, and, in making his will,
that he disposed of his property under the belief that
the appellee was his lawful wife. She swears that her
family knew this obstacle to the marriage, and that her
son-in-law agreed to obtain a divorce for her for fifty
dollars, and after handing him the money, he an-
nounced in a few days thereafter that the divorce was
obtained and the marriage could take place. In this
statement she is confirmed by her son, and if she be-
lieved that the marriage was legal, it must have pro-
ceeded from this undertaking on the part of her son-in-
law to obtain the divorce, and her faith in the truth of
his statement that it had been obtained. Both her
daughter and son-in-law testify against her, and contra-
dict her testimony on that point, but the jury seem to
have credited the old lady, and rejected the testimony
of the son-in-law and daughter, and with their hostility
towards the mother and the unnatural position occu-
pied by them in the case, the jury might well have
concluded that the refusal of the appellee to give her
daughter a part of this property caused the interest
they have manifested for the success of the contestant.

While the evidence is conclusive as to mental capac-
ity, there is some evidence from which might be in-
ferred the existence of undue influence on the part of
the appellant, and it may be proper, therefore, to no-
tice the instruction of which the appellant complains.

Porschet v. Porschet.

The third instruction, given at the instance of the appellee, is in substance: "That the fact of cohabitation between appellee and the testator, the appellee having a living husband is not of itself sufficient to authorize a verdict against the will, unless the fact be accompanied by undue influence over the testator by the devisee, but the jury may consider that fact, together with all the facts in evidence, in order to ascertain whether or not such undue influence was exercised."

This instruction embodies the law of the case, unless the unlawful relation existing between the testator and the devisee is of itself sufficient to establish undue influence.

The influence arising from such an unlawful relation must be exercised over the mind of the testator in such a manner as to invalidate the will, and if not improperly executed, or the testator left to dispose of his property according to his own wish and desire, we see no reason for disregarding his will from the mere fact that he has seen proper to give his estate to one who has sustained to him the relation of wife when in fact the lawful wife of another.

A distinction may, and doubtless would, exist between the ordinary influence of a lawful relation and that of an unlawful relation. The exercise of an influence that must naturally exist, by reason of the lawful relation, would not be improper, while the exercise of a like influence by a stranger, or one occupying an unlawful relation, would be sufficient to destroy the will. This undue influence, however, must be exercised to render the will invalid, and where there is no constraint

operating on the mind of the testator at the time of the testamentary act, and he disposes of his property in accordance with a former purpose of his own, the devise will be upheld, although it may be made to a stranger, or to one the testator was under no natural, legal, or moral obligation to make provision for. If the offspring of a sound and disposing mind and memory, the mere fact that the testator has given his estate by the will to one with whom he has lived for years as his wife, in preference to his brothers and sisters, will not authorize the court to say to the jury that the law presumes the existence of undue influence, and, in the absence of any proof to the contrary, they must find against the will. The fact of the unlawful relation must go to the jury in connection with the other facts and circumstances proven, in order that they may determine the question of undue influence.

In the case of Rudy v. Ulrich, 69 Pa. State, Shelroose, Judge, delivering the opinion of the court, said:

"In an issue of *devis avit vel non* on the allegation of undue influence by the mother of an illegitimate child, the unlawful cohabitation of the mother with the testator is not of itself sufficient evidence from which a jury could infer undue influence."

In Main v. Ryder, 84 Pa., 217: Main had abandoned his lawful wife and children, and lived for many years in adultery with a woman alluded to in the will as *his wife*. He had by that woman several children, and made her and the children devisees of a large portion of his estate. The court, by Agnew, Justice, said: "These circumstances do not create a presumption that the will was executed under improper influences, and while the

illicit relation should be considered in determining the question of undue influence, the effect of such influence is a question of fact for a jury."

In the case of Wainright's appeal the same court, in a case where the testator and the residuary legatee lived together unlawfully for several years, it was held that the circumstances of the case were not sufficient to justify a jury in finding against the will.

Our attention has been called to no case taking a different view of the question. The case of Dean v. Negley, 41 Pa., decided that it was a question of fact for the jury, although the judge delivering the opinion said he thought the law in such a case presumed undue influence.

In Monroe v. Barclay, 17 Ohio State, it was held that a will produced by influences springing from an unlawful relation between the legatee and the testator did not make the will void unless such influences were exerted in restraint of the will of the testator, and prevented him from disposing of his property in accordance with his own wishes. See also Dickie v. Carter, 42 Illinois: "Where the devisee had improper intercourse with the testator, it was held that, however immoral the relation might have been it was not sufficient to invalidate a will in favor of the wrong-doer if no improper influences are shown to have been exerted to induce the will."

The law will not indulge in a presumption against the act of a party in such a case as this, but the entire question of undue influence should be submitted to the jury, and they must determine whether such influences were or not improperly exerted over the testator when

making his will as prevented him from disposing of his estate in accordance with the suggestions of his own judgment, and in the absence of such an influence over him by others as restrains him from its exercise, the will must be held valid.

The second instruction, in defining undue influence, tells the jury that it must be such an influence as "substitutes for the will of the testator the will of some one else." While this, as an abstract proposition, may be correct, still the question at last is, was the influence over the testator so great as to prevent him from disposing of his property as he wished, or such as constrained him to make provisions in his will which he did not desire to make and would have refused to make, if his will had not been subordinated to that of another. We can not well see how the addenda to the instructions could have misled the jury from the facts of this record, as the evidence of undue influence is scarcely to be found, and the instructions given for the contestant were so plain as to enable the jury to know what was intended by the instruction given. Not that the entire will of the devisor must have been subordinated to that of the principal devisee, but that she had such an influence over him as destroyed his free agency in the attempt to dispose of his estate. In the instructions given for the contestant the jury was told that if the devisor believed that the relation of husband and wife existed between him and the appellee, and that she used the influence she acquired over him by reason of such a relation in procuring the will, and that in the disposition of his estate he would have acted differently if left to the exercise of his own judgment and discretion, they must find against the will.

The jury was further told that if the paper purporting to be the will of the testator was obtained from him by *some mode* which could not be resisted by him, and destroyed his free agency and constrained him to do that which, if left to his own judgment, he would not have done in disposing of his estate, they must find against the will.

And again. If the testator at the time he executed the paper believed that the appellee was his wife, and was induced so to believe by the appellee, and willed to her his property alone upon the consideration that she was his wife, and would not have done so if he had not so believed, and they further believe that she was the wife of Beck, they must find for the contestant and against the will.

And again, the jury are told that an influence in procuring a will, which may be lawful when exercised by a wife, may be objectionable and improper if exercised by a woman living in unlawful intercourse with the testator, and if the jury believe that at the date of the will the appellee had a former husband living, from whom she had not been divorced, and that she used the influence acquired over the testator by reason of that unlawful intercourse in procuring the execution of the paper, and constrained him against his will to execute it when he would not have done it if left to his own judgment, they must find against the will. It was conceded on the trial that no divorce had been obtained from Beck by the appellee, and the question of undue influence, or what might have constituted such a restraint upon the mind of the testator as destroyed his free agency, was presented in every phrase to the jury

at the instance of the contestant, and certainly in as favorable a light as he could have desired, and, therefore, the jury could not have been misled by the general instruction on the subject given at the instance of the propounder of the paper.

The devisee was a competent witness, and certainly so when her conduct and testimony were relied on to destroy the validity of the instrument under which she claimed, &c. Flood v. Prayoff, 79 Ky.

There are other errors assigned not necessary to be considered, as in our opinion the judgment below should be affirmed.