## McKee, By, et al. v. McKee's Executor, et al.

(Decided November 12, 1913).

### Appeal from Christian Circuit Court.

1. Wills—Execution and Attestation—Purpose of Statute.—It was the purpose of our statute prescribing the manner of executing wills, to provide for their execution and attestation in such way as to eliminate as far as possible all opportunity for fraud or deception; that is to be sure of the identity of the paper signed by the testator and attested by the witnesses.

2. Wills—Execution of Wills.—Any material deviation from the manner of execution required by the statute will be fatal.

3. Wills—When Codicil Cannot be Upheld—Identity of Instrument.— A codicil signed by the testatrix in a separate room from one of the attesting witnesses, and attested by such witness in a separate room from the testatrix, can not be upheld where the opportunity for substitution or imposition was offered, even though the witness in the adjoining room heard the codicil dictated, heard the whole conversation, and heard the request that she be asked to attest it, the legislative purpose being to insure the identity of the instrument and to eliminate opportunity for substitution.

H. W. LINTON, ALVIN H. CLARK for appellants.

TRIMBLE & BELL, SELDEN Y. TRIMBLE and JOHN STITES for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

The only question involved upon this appeal is the validity of a paper offered to be probated as a codicil to the will of Caroline S. McKee.

The county court declined to probate it, and the circuit court declared it invalid, and the beneficiaries under the codicil, through their *guardians ad litem*, have appealed.

The uncontroverted facts are that the decedent made her will in 1909; that on the night of the 14th of December, 1911, she being very sick, and in bed, desired to write a codicil to it, and so notified the trained nurse who was in attendance upon her; the nurse dissuaded her from attempting to write the codicil herself, but prepared the same for her at her dictation and in her language; that about the time she had completed the paper the young grandson of the testatrix came into the room, and one of them held the lamp while the other held her up in bed so that she might sign the same, which she did; that immediately after the signing by the testatrix the nurse took the paper to a table or a stand in the room and signed her name as a witness; that then the testatrix requested the nurse to go into an adjoining room and request one Mrs. Long to come in and also witness it, but the nurse suggested that possibly Mrs. Long was in bed, and that she would just take the paper in there and have her there to witness it, which she did. She then brought the paper back and delivered it to the testatrix, who examined it and said it was all right. It further appears that Mrs. Long instead of being asleep in the adjoining room as suggested by the nurse, was in fact sitting up therein near the door between the two rooms, and against which the bed wherein the testatrix was lying, was placed; that the sick woman had been taking quinine and was somewhat deaf, and it was necessary for the nurse to speak loud in talking to her, and there was a considerable crack under the door between the two rooms; that by reason of these things Mrs. Long heard everything, or practically everything, that occurred in that room. She heard the whole of the codicil dictated; she heard the request to the nurse to witness it; she heard the request to have her (Mrs. Long) come in and witness it; and in fact knew almost as much about what occurred in the sick room as if she had been in there. But in fact Mrs. Long never saw the testatrix sign her name, nor could she have done so; nor did the testatrix see Mrs. Long sign her name as a witness, nor could she have done so.

So the only question is, was the codicil executed in compliance with the provisions of our statute prescribing the manner in which wills shall be executed.

Section 4828, Kentucky Statutes, is as follows:

"No will shall be valid unless it is in writing, with the name of the testator subscribed thereto by himself,

or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

It is argued by counsel for appellant that inasmuch as only a substantial and not a literal compliance with the statute quoted is required (Savage v. Bulger, 25 R., 765, and authorities there cited), that the facts of this case bring it within that rule; but in the very cases so cited it is distinctly held that there must be no violation of the express language of the statute.

In this case we have two of the express provisions of the statute violated, viz.:

(1) That the testator shall subscribe the instrument in the presence of at least two credible witnesses, and (2) that the witnesses shall subscribe their names in the presence of the testator; unless it may be said under the facts that they were in contemplation of the statute, in "the presence of" each other.

The only adjudication in this State dealing with the direct question here involved is in Orndorff v. Hummer, 12 B. M., 619, wherein this court held, under a statute requiring a will to be attested by two or more competent witnesses subscribing their names in the presence of the testator, that where the testator immediately after the acknowledgment and before the instrument was attested by the witnesses, fell asleep, or from other causes became insensible of what was going on around him, and unconscious of the act of subscribing, which act he had a right to supervise, the will was not properly executed under the statute, even though it was witnessed in the same room.

In that case the court considered at length what would and what would not be a valid execution of a will, and among other things said:

"But it seems that after this acknowledgment by the testator, and, as we suppose, after he had closed his eyes, as the witnesses say he did immediately, they went to the table on which the will had been written, which had stood, for the benefit of light from the window, just behind the head of the lounge in which the sick man lay, in the middle of the room, and the table having been so removed as to be between four or five feet from the lounge, the three witnesses, some of them being between

the table and the bed, subscribed their names as witnesses to the will. The headboard of the lounge intervened between the·testator and the table, so that at the moment of the subscription by the witnesses, he could not, as he lay in bed, see the table, and probably not even see the witnesses; and it is doubtful whether, if awake, he could have changed his position without assistance, so as to have seen them. And the question is made whether this was a subscription in the presence of the testator. This requisition of the statute was intended to secure to the testator the means or opportunity of knowing that a false will is not substituted for a true one, and that his will is witnessed by the persons whom he has·chosen for the purpose. But it has never been held that it was necessary that he should actually see either the will or the witnesses when the attesting clause was subscribed; it is sufficient that he might see them if he had desired to do so. And as this will was subscribed in the same room in which the testator lay, and, therefore, actually in his presence, the question is, first, whether, if he had desired to see, he might not without any extrinsic aid, have placed himself in a position in which he could and would have seen what was going on, which is a question of fact; and secondly, whether, even if he could not have done this without the aid of others, it is not to be assumed unless the contrary is shown, that he might have had that aid if he desired it, and, therefore, that he might have seen what was going on, if he had wished to see it.

When the subscription takes place in a different room from that in which the testator lies in bed, it is not actually and in common parlance done in his presence. But if it is actually in his view, or perhaps if by such change of position as he himself could make in his bed, he could see it, and in one case even when the testatrix was in her carriage, and might have seen the witnesses subscribe in a scrivener's office through an open window, this, in support of a fair will, has been held to be sufficient in the presence of the testator to answer the objects of the statute. But this is constructive and not an actual presence. And to say in such a case that the subscription, though done out of the room in which the testator was, and, therefore, not actually in his presence, might be considered as done in his presence—if by the aid of others he might have seen it, might sanction a subscription in another room, with the door shut be-

tween them, because the testator might have it opened if he desired it. There must, therefore, be some limit to the doctrine of constructive presence. And the requisition that if the subscription be not in the same room in which the testator lies, it must be clearly in view, so that by the exertion of his own violition and his own physical power, he may, by a mere change of position in the bed, see it if he will, is a sufficiently liberal, and perhaps too liberal a stretch of the constructive presence, which will meet the objects of the statute. It would be a safe, and is perhaps the true doctrine to say, that in such cases the position of the witnesses in subscribing the will should be such that the testator might see the will and the witnesses by merely looking in that direction. For if he could not see them thus easily, he might not know which way to turn, or whether any effort would be effectual. And it is to be recollected that so far as presence is intended to enable the testator to identify the paper which is subscribed as his will, distance is a most important element in the question.''

It is clear from the reasoning in that case that the doctrine of ''constructive presence'' cannot be safely enlarged so as to be applied under the facts of this case. Here not only could the testatrix not see the attesting witness, but by reason of her deafness she could not hear what was going on in the adjoining room between the nurse and Mrs. Long; in fact she could not have known that Mrs. Long was in the adjoining room except from what the nurse reported to her.

The purpose of the statute has been clearly and accurately stated by this court in the case of Sharp v. Wallace, 83 Ky., 588, where it is said:

''The object of the statute providing the manner in which a will shall be executed to render it valid is to insure identity and prevent imposition and fraud. And though a substantial compliance with it is all that is required, no court is authorized to admit to probate an instrument as the last will of a deceased person in violation of its express language, however well founded may be the belief it was intended by him as his will.''

Clearly it was the purpose of the statute to so provide for the execution and attestation as to eliminate all possible danger of fraud or deception; in other words to so require the execution and attestation as that the testator might certainly know that the paper which he signed was the self-same paper which was attested,

and to enable the attesting witnesses to know that the paper they attested was the same paper signed by the testator.

Tested by these rules, can it be said in this case that the testatrix knew the paper she signed was the paper attested by Mrs. Long? Can it be said that Mrs. Long knew the paper which she attested was the one signed by the testatrix? Can it be said that the opportunity for fraud or substitution was not offered?

Many persons wait until their last days—even hours —to make wills; they are frequently then weak and debilitated; at such times they are usually surrounded by persons who are interested in the disposition of their property; under such conditions opportunity for fraud or deception is frequently presented, and the incentive for its perpetration is great.

Manifestly the Legislature had these things in mind when it laid down these strict rules for the execution of wills, and clearly it would be unwise for the courts to relax them.

It is a solemn thing to dispose of one's property by will—especially on a deathbed—and the legislative purpose as clearly evidenced by this statute was to require it to be done in such way as to eliminate, as far as human laws can, all possibility of fraud, deception, or imposition.

Any material deviation from the manner of execution required by the statute must necessarily be fatal to the validity of such an instrument.

The wisdom of the enactment cannot be questioned; and the fact that in this case there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from these rules, even to bring about justice in the particular instance.

Any material relaxation of the strict statutory rule would open up a fruitful field for fraud, substitution, and imposition.

Judgment affirmed.