## Ensminger, Guardian Ad Litem v. Bailey.

(Decided May 6, 1924.)

### Appeal from Mercer Circuit Court.

1. Wills—Verdict for or Against Will Not Disturbed, Unless Palpably Against Weight of Evidence.—In view of Kentucky Statutes, section 4850, a verdict for or against a will will not be disturbed, unless palpably against weight of evidence, and scintilla rule must be applied.
2. Wills—Evidence of Incapacity Held to Warrant Submission to Jury.—Evidence of testamentary incapacity held sufficient to warrant submission to jury.
3. Wills—Verdict Against Testamentary Capacity Not Palpably Against Evidence.—Verdict finding testamentary incapacity held not palpably against evidence.

W. W. ENSMINGER, E. M. HARDIN and CHENAULT HUGUELY for appellant.

E. H. GAITHER and C. E. RANKIN for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

S. L. Bailey died a resident of Mercer county in December, 1921; on January 2, 1922, the paper purporting to be his will was probated in the Mercer county court. Lucy Thacker, a daughter, who took nothing under the will, appealed to the Mercer circuit court. The case was tried there before a jury, who returned a verdict finding that the paper was not his will. The court entered judgment on the verdict and the guardian *ad litem* for the infant defendants appeals.

There was no prejudicial error in the admission or rejection of evidence. The instructions are in the form often approved by this court, and the only question made on the appeal is that the court should have instructed the jury peremptorily to find in favor of the will. The jurisdiction of this court in will cases is regulated by section 4850, Kentucky Statutes, in these words:

"The Court of Appeals shall not hear any matter of fact pertaining thereto, other than such as may be certified from the circuit court; and the same effect shall be given to the verdict of a jury in a will case as is given to the verdict of a jury in other civil cases."

This statute made an essential change in the previous statute, which allowed this court in will cases to "try both law and fact." The present statute not only omitted these words but expressly provided that the same effect shall be given to the verdict of a jury in a will case as is given to the verdict of a jury in other civil cases. Construing the statute this court in Broaddus v. Broaddus, 10 Bush 309, laid down the following rule:

"That is, where a jury, under proper instructions, has rendered a verdict for or against a will, it will not be disturbed, unless palpably against the weight of the evidence."

This construction of the statute has been followed by the court in the subsequent cases and a peremptory instruction to find in favor of the will has not been authorized in any case unless there was no evidence to sustain a verdict against the will, as under the statute the verdict is given the same effect as in other civil cases. The scintilla rule applies in will cases as in other civil cases. That rule is this:

"The rule in this state as to peremptory instructions, after issue formed and evidence heard, is that when there is evidence tending to establish a matter in issue, the court should not grant such an instruction, although the presiding judge should be of the opinion that if the jury should find adversely to the request for such instruction, he would be compelled to sustain a motion for a new trial. This is expressly adjudged in Thompson v. Thompson, 17 B. M., 22, has been followed ever since in numerous cases, and we are not disposed, after so long following it, to disturb it." Buford v. L. & N. Railroad Co., 82 Ky. 286.

The question therefore to be determined is, was there any evidence tending to show Bailey's incompetency? The facts are these:

For many years he had a trouble with his nose which affected his brain; it was a syphilitic trouble. He complained of his head, said he had a drawing feeling; his head felt as it it was drawing. He was a highly nervous man and if anything crossed him he couldn't control himself at all. He was subject to brain storms and when under these excitements he wouldn't know his obligation

to God or man or anything. He would do the most unreasonable things, talked unreasonably and incessantly, looked wild or like a crazy man, and while under these storms treated his wife and children as though he recognized no obligations to them. By his will he disinherited Lucy Thacker, leaving all of his property to the other members of his family, and while she only appealed from the order probating the will, the son, who was the, executor of the will, the mother and the other daughter testified for the contestant showing the facts above stated.

Briefly put the will seems to have grown out of these circumstances: Lucy was the youngest daughter and a great favorite with him. She became engaged to Mr. Thacker, to whom her father objected on account of his being a clerk in a barroom. She and Thacker were married in 1906 at a neighbor's house after the father had threatened to shoot Thacker if he came on the place again. When the father heard of the marriage he went all to pieces. He did not take off his clothes that night but walked the floor, throwing his arms about and talking wild. While still under the influence of this passion he went to a lawyer and had the lawyer to draw his will, in which he cut Lucy out, giving as a reason for it "because of her failure and refusal to be obedient to me and my wishes, particularly in her engaging herself in marriage to Isaac Thacker." This paper was made November 8, 1906, after her marriage to Thacker. He refused to allow her to come to the house, refused to speak to her or have anything to do with her, although she made numerous efforts to restore proper relationships. In the fall of 1910 her mother was taken sick and she came in a buggy to the home for the purpose of seeing her sick mother, and seeing her father in the tobacco ground she got out of the buggy and went to where he was and asked permission to see her mother who was sick. He flew into a great rage, was violent and wild, ordered her off the place and never to come back. That night he laughed and talked and threw things down on the floor, said he could kill himself, would not take his clothes off and was practically a wild man. This spell continued some days. He then got out the will he had made in 1906, saying that he did not want the name of one of the witnesses on his will and copied the paper in his own handwriting and signed it, dating it January 16, 1911, the day he started for Florida, and on that day was nervous and in a very bad condition. The fact is he had not then recovered

from the violent brain storm which he had when he ordered his daughter off with her little child. Some years later he became reconciled to his daughter; he gave her a house in Lawrenceburg and the old attachment was renewed. After this he frequently said that he had no will, that he didn't need any will, that the law was a good enough will for him. The paper made in 1911 uses the same language as to Lucy Thacker as the paper written in 1906, although Lucy Thacker had then been married four years and had two children, as he knew, and in fact the paper made in 1906 was made after she had married Thacker. The fact that this language is used confirms the testimony of the witnesses to the effect that when in these violent spasms of temper he would not know what he was doing and afterwards would not know what he had done. His treatment of his mother, who lived near him, and his treatment of his wife and children on many occasions, as shown by the testimony, was such as to indicate that when he was crossed he was utterly incapable of understanding or recognizing his obligations to any of them. He would not go to see his mother when she was sick, he refused to go to the funeral when she died and used the most offensive language about her as well as about his own children at times. There was a strain of insanity in the family, and under all the facts we can not say that there was no evidence warranting the submission of the case to the jury.

A number of witnesses were introduced for the will, who testified that he was a good business man, made money and was recognized as competent to transact business; but some of these witnesses also stated that he was not competent to even transact business when in one of his brain storms, and the current of the evidence is clearly to the effect that he was a man of strong will and when crossed often became absolutely unreasonable and irresponsible. Under all the proof in the case this court can not say that the verdict of the jury is palpably against the evidence. McDonald v. McDonald, 120 Ky. 211; Gay v. Gay, 183 Ky. 242.

"The fact that the evidence is conflicting or that this court would have made a different finding on the facts, or that in its opinion the verdict is against the weight of the evidence, furnishes no cause for setting it aside; nothing short of its being clearly and palpably against the evidence will give the ap-

pellate court authority to disturb it on this ground.''
L. & I. Railroad Company v. Roemmele, 157 Ky. 84;
Denker Transfer Co. v. Pugh, 162 Ky. 824.

The judgment is affirmed.