## Palmer, Executor of Casper Smith, et al. v. Smith, et al.

(Decided October 13, 1925.)

### Appeal from McCracken Circuit Court.

1. Wills—Testator's Children Properly Allowed to Testify as to His Statements and Actions on Issue of Testamentary Capacity.—In will contest, court properly allowed all of testator's children to testify as to his statements to them and as to his actions in their presence on issue of testamentary capacity, notwithstanding Civil Code of Practice, section 606.

2. Wills—All Facts and Circumstances Must be Taken Into Consideration in Determining Issue of Undue Influence.—In determining question of undue influence in execution of a will, all facts and circumstances must be taken into consideration.

3. Wills—Question of Undue Influence in Will Contest Held for Jury.—In will contest, question of undue influence held for jury.

4. Wills—Question of Undue Influence is for Jury, if there is Any Evidence Thereof.—If there is any evidence of undue influence in will contest, question is for jury.

5. Wills—Verdict Against Testamentary Capacity Not Palpably Against Evidence.—Verdict finding testamentary incapacity held not palpably against evidence.

6. Wills—Verdict for or Against Will Not Disturbed, Unless Flagrantly Against Weight of Evidence.—In view of Ky. Stats., section 4850, verdict for or against a will should not be disturbed on appeal, unless it is flagrantly against the evidence.

WHEELER & HUGHES and JOHN G. LOVETT for appellants.

REED & BURNS, C. C. GRASSHAM and L. B. ALEXANDER for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Casper Smith died a resident of McCracken county in the spring of 1922, the owner of 314 acres of land of value between sixty and one hundred dollars an acre and about $10,000.00 in personalty. He left surviving him eight children. After his death a paper dated August 18, 1920, was produced in the county court and

probated as his will. By this will he left all of his property to his two youngest children who resided with him and a son who resided about half a mile from him. His other five children lived in Calloway county about twenty-five miles from him. He had lived in Calloway county for many years but about twenty years before his death had moved to McCracken. The five children who took nothing under the will appealed to the circuit court from the order of the county court probating it. The case was tried before a jury who found the paper not to be his will. The propounders appeal.

The deceased was eighty-two years old at his death and a little over eighty when he made his will. His two youngest children had lived with him for many years. His wife had died three or four years before. He was on good terms with all of his children. They had all lived with him until they married and had worked on the farm helping him to accumulate what he had. It does not appear that he had made advances to any of them.

The court allowed all of the children to testify as to statements of their father to them and as to his actions in their presence. It is earnestly insisted that this was improper under section 606 of the Civil Code. But the circuit court correctly followed the rule laid down by this court in a long line of cases, beginning with Milton v. Hunter, 13 Bush 163; Cave v. Cave, 13 Bush 454; Flood v. Pragoff, 79 Ky. 612; Phillips v. Phillips, 81 Ky. 328; Porschet v. Porschet, 82 Ky. 93; Williams v. Williams, 90 Ky. 28; Caddell v. Caddell, 175 Ky. 505. In Equitable Life Assurance Society v. Bailey it was held that the beneficiary in a policy could not tell what the deceased insured said or did in an action against the insurer. But no question as to the competency of the heirs and devisees in a will case was raised there. In the subsequent case of Combs v. Roarks, 206 Ky. 455, it was held that the heirs of a decedent could not testify against another heir in a suit to recover certain certificates as to what the decedent said and did. But in concluding the discussion in that case the court said:

"Under our decisions a personal representative who has no pecuniary interest in the result of the, trial may testify in behalf of the estate, and in will contests all parties may testify as to the testator's mental condition. This ruling is so well established it will not be disturbed, but it will not be extended."

It is also insisted that there was no evidence of undue influence and that the court erred in submitting this question to the jury. In the determination of this question all the facts and circumstances must be taken into consideration, for weakness opens the door for undue influence. Dr. L. E. Stinson testified that he was a friend of the deceased; that he had treated him for 15 years; was his physician in his last illness; that in the last six years of his life his mental condition was changed and was not good; that he was a man that took his dram every morning for forty years; that he did not get drunk but just kept whiskey in his system all the time until prohibition came into effect and he quit suddenly; that this affected his mind and it was not as good as before; that he failed to recognize people and had what is termed cirhosis or hardening of the liver; that his kidneys did not act properly and his mental condition was very bad; that he had eczema in his head, and that he was not competent to know his property or to do any business. His daughter Letha transacted all of his business. He told the doctor that he had loaned his son-in-law Copeland $1,500.00 and he wanted to give Copeland's wife $500.00 of it and not charge them any interest, but that Letha objected.

Dr. J. B. Starks, who had also treated him, gave similar testimony, saying that he was suffering from some kidney disease that affected his mental condition. He called his disease senile dementia. Deceased told him that he was not capable of attending to his business and did not know what he was doing. In addition to this there was similar evidence by a number of neighbors who knew him well that there was a marked change in his mental condition in the last six years of his life; that he attended to no business; that his children who lived with him ran everything; that he was forgetful, repeating often what he had said and not competent to transact any business. He often declared that he was going to divide his property equally among his children, and after he made the will he told one of the daughters he intended to make a change; that he wanted her to have something. It was also shown that he said he didn't want to make the will but had to do it to please those at home.

In view of the evidence as to the old man's childish condition and the influence which the two children residing with him had over him after his wife's death

and his declaration as to why he made the will it can not be said that there was no evidence here of undue influence, and it is well settled that if there is any evidence the question is for the jury. The scintilla rule applies in will cases no less than in other cases.

It is also insisted that the great weight of the evidence shows that the old man was fully competent to make a will. But the statute provides that the same effect shall be given to the verdict of a jury in a will case as is given to the verdict of a jury in other civil cases. Kentucky Statutes, sec. 4850. In other civil cases the verdict will not be disturbed unless it is palpably or flagrantly against the evidence. Clearly the verdict of the jury in this case is not palpably or flagrantly against the evidence. It is not enough that the court from its view of the evidence would have decided the case differently, for such a rule here would practically deny the right of jury trial. The jury sees and hears the witnesses. They know local conditions. They put together their common experience, and the unanimous verdict of twelve good men drawn from the different walks of life and putting together their common experience should not be disturbed on appeal unless it is flagrantly against the evidence. See Ensminger v. Bailey, 203 Ky. 49.

Judgment affirmed.