# Poindexter's Adm'r v. Alexander et al.

Feb. 24, 1939.

GEORGE S. WILSON, Judge.

148

E. B. ANDERSON and RIDLEY M. SANDIDGE for appellant.
R. MILLER HOLLAND for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

Mrs. Emma B. Poindexter died in Daviess County on February 7, 1935, in her eightieth year. The appeal now before us involves the propriety of a judgment of

the Daviess Circuit Court refusing probate of an alleged will of Mrs. Poindexter on the ground of its improper execution under the Statute of Wills, Kentucky Statutues, Section 4828. The will was executed approximately three weeks before her death at a time when she was apparently bedridden and very weak. Mrs. S. C. Swift is a practical nurse and lived in the home of testatrix for about three years prior to her death. She is one of the attesting witnesses to the will and is the only one who testified in the circuit court concerning its execution. According to her testimony, on the morning of the day when the will was executed, Mr. Poindexter (who died before this case was tried in the circuit court) came into the kitchen where Mrs. Swift was at work and told her that he was about to write a new will for his wife. Sometime later that same day, Dr. S. P. Oldham came to visit the testatrix and, as he was preparing to leave, Mr. Poindexter asked him not to go until he had witnessed Mrs. Poindexter's will. He then called to Mrs. Swift, and the doctor and Mrs. Swift lifted Mrs. Poindexter to a sitting position in the bed and Mr. Poindexter presented the paper with the statement: "I want you to sign this." Mrs. Poindexter then scrawled her signature to the paper and was immediately lowered to her pillow. When Dr. Oldham and Mrs. Swift had placed Mrs. Poindexter back upon the pillow, the paper was taken by Dr. Oldham to a small table near the foot of the bed and there signed by him.

About four to six feet from the head of the bed in which Mrs. Poindexter was lying, there was an archway about eight feet wide leading into the dining room of her house. There were no doors in this archway but there were draperies. It does not appear whether or not the draperies were drawn, but a floor plan of the house introduced with the testimony of Mrs. Swift shows very clearly that the wall of the room in which Mrs. Poindexter was lying effectually cut off any view of the buffet which stood in the corner of the dining room at right angles to the wall running at the head of the bed. Mrs. Swift testified:

"Q. Where did you sign your name to that will? A. I stepped back in the dining room to a big buffet in the dining room at the side of the door there and a big curtain hanging up and I stepped out in the dining room.

"Q. Why? A. I just done it. I don't know why.

"Q. Explain to the jury what was your idea for going outside of that room and signing that on that buffet when there was a table at the foot of the bed? A. I just felt sorry for her and I just stepped out there and he just came on back and said for me to sign it and I signed it on the buffet in the dining room.

"Q. Because you felt sorry for Mrs. Poindexter you signed that will on the top of a buffet in the dining room? A. Yes sir.

"Q. How did that will get back out of your hands? A. Mr. Poindexter taken it. He brought it in and laid it down for me to sign it and picked it up and that is the last I saw of it.

"Q. Mrs. Swift, was there any door leading from that living room into the dining room? A. No sir, no door only a curtain, and I stepped back in there about three feet back to the buffet and signed it. She was on one side of the wall and I was on the other side in the dining room."

The will is short and a photostatic copy of it is in the record. It is apparently entirely written in pencil in the handwriting of Mr. Poindexter. We quote it in full:

"This is my last will and testament. Being of sound mine and disposing memory, I, Emma B. Poindexter, bequeath all my property of whatever kind to my beloved husband, B. H. Poindexter in fee simple, and it is my desire that he qualify as my executor without bond.

"Given under my hand this 22 of January, 1935.

"Emma B. Poindexter.

"Witnesses:
"S. P. Oldham,
"Mrs. S. C. Swift."

On February 14, 1935, this paper was probated in the Daviess County Court. Mrs. Swift did not then testify and the probate seems to have been based entirely upon the testimony of Dr. Oldham. Thereafter,

both Dr. Oldham and Mr. Poindexter died and an appeal was prosecuted to the Daviess Circuit Court from the order of probate. At the trial in the circuit court, the proponents of the will introduced the county clerk to testify concerning the regularity of the probate. A son of Dr. Oldham identified his father's signature and Mrs. Swift, after identifying the signatures, testified to the facts as set out in substance above. The propounders introduced the county judge, before whom the will had originally been probated, in an effort to have him state the substance of the testimony of Dr. Oldham when the will was originally offered. The court excluded this testimony of the county judge and it is not seriously contended that this was error. Appellants, with creditable frankness, state that they are unable to show any basis for predicating a claim of error on this point and we see none. Following the testimony of the county judge, the propounders rested and the court thereupon peremptorily instructed the jury to return a verdict against the will. This appeal followed.

Section 4828 of the Kentucky Statutes requires that the attesting witnesses: "shall subscribe the will with their names in the presence of the testator." The general rule seems to be that if the act is done in the same room it is prima facie done in the presence of the testator; while, if it is done in another room, it is prima facie not done in his presence. 1 Page on Wills, 2d Ed., page 538. In Orndorff v. Hummer, 12 B. Mon. 619, the testator signed the will there in question while lying in bed and then relapsed into sleep or into a coma for some hours. Finally, the attesting witnesses approached the bed and offered the will to the testator. The testator opened his eyes, acknowledged the will, and immediately relapsed into sleep or a coma. The witnesses (and it will be noted that they were the attesting witnesses) testified that they then immediately went to a table just behind the head of the lounge on which the testator lay. The head-board of the lounge intervened between the testator and the table so that, at the moment of the subscription by the witnesses, he could not, as he lay in the bed, see the table, and, probably, not even see the witnesses. It was doubtful whether, if awake, he could have changed his position without assistance so as to see them. In holding the execution of that will to be not in the presence of the testator, the reasoning of the court is pertinent to the present con-

troversy. It need not here be repeated in full. However, the court said:

"And the requisition that if the subscription be not in the same room in which the testator lies, it must be clearly in view, so that by the exertion of his own volition and his own physical power, he may, by a mere change of position in the bed, see it if he will, is a sufficiently liberal, and perhaps too liberal a stretch of the constructive presence, which will meet the objects of the statute. It would be a safe, and is perhaps the true doctrine to say, that in such cases the position of the witnesses in subscribing the will should be such that the testator might see the will and the witnesses by merely looking in that direction. For if he could not see them thus easily, he might not know which way to turn, or whether any effort would be effectual."

It is insisted for appellants that the situation here presented, with no door between the two rooms, should be treated as though the subscription to the will by Mrs. Swift was in the same room with the testatrix and therefore prima facie in her presence. Accepting the floor plan, filed as an exhibit in the record, it seems manifest that the two rooms were as distinct as if a door stood between them; but, even if this were not true, appellant's situation would not be improved for there was undoubtedly a wall between testatrix and the point where the witness subscribed the will. As shown by the decision in Orndorff v. Hummer, supra, the subscription could be out of the presence of the testatrix even though it were made in the same room. We think it is clear, if Mrs. Swift's testimony is to be accepted, that her signature was not made in the presence of the testatrix in substantial compliance with the meaning of the statute. McKee v. McKee's Executor, 155 Ky. 738, 160 S. W. 261; In re Allred's Will, 170 N. C. 153, 86 S. E. 1047, L. R. A. 1916C, 946 and notes, Ann. Cas. 1916D, 788.

The appellants argue with great force that the testimony of the subscribing witness against the validity of the will is so contradictory to the legal effect of placing her signature thereon as not to overcome as a matter of law the prima facie case made out by the established signatures to the instrument. They insist that the question should have been submitted to the jury in

order that they might weigh the credibility of the testimony of Mrs. Swift against the presumption of due execution attaching to the document itself. There is persuasive authority for this contention where there is an attestation clause showing due execution of the will to which the witnesses have subscribed their names. In that situation, however, the attestation clause itself is evidence, to some extent at least, of the facts relating to the formalities of execution therein recited and the propounders of the instrument are not left with a mere presumption arising from the signatures to supply the place of evidence. Caddell's Heirs v. Caddell's Executor, 175 Ky. 505, 194 S. W. 541. As said by Mr. Justice Field in Lincoln v. French, 105 U. S. 614, 617, 26 L. Ed. 1189:

> "Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear."

In 1 Page on Wills, page 1124, the author says:

> "The subscribing witness, by acting as such, in effect formally declares that all the facts necessary to the legal execution of the will exist, and he has in advance seriously discredited his subsequent denial of these facts under oath. The presumption of the performance of the necessary acts may, therefore, not be overcome by such adverse testimony, and a will may be admitted to probate, though one or more of the subscribing witnesses testify adversely thereto."

A literal acceptance of this statement, of course, would avoid any necessity for doing more than proving the signatures of the attesting witnesses and nothing that they might say thereafter would carry any weight in overcoming a presumption raised by their subscription to the will. An examination of the authorities cited in support of this statement, however, indicates that it is only in those cases where the testimony *contradicts* an attestation clause that the rule applies. Indeed, in the same paragraph, from which we quoted above, the author says:

> "The presumption of regularity of execution may be rebutted by sufficient direct evidence; and this direct evidence may be *the adverse evidence of the subscribing witnesses."* (Our italics).

In support of this last statement, the author cites In re Wilm's Estate, 182 Wis. 242, 196 N. W. 255. In that case, it does not appear whether or not the attesting witnesses were the only ones who testified. However, the court said (page 256):

"It is urged that, since the attestation clause imports verity and that in the case of the death of, the witnesses before probate the presumption that they signed in the presence of the testator would be sufficient to admit the will to probate, it should be admitted under the evidence as it stands. The answer to that is that we must decide the case upon the evidence in the record, and not upon evidence as it might have been had it been impossible to secure the evidence of the witnesses to the will."

Where the evidence of an attesting witness contradicts a positive statement, plainly, the witness discredits himself and the weakness of his own testimony cannot as a matter of law overcome the prima facie case made out by the will itself. Caddell's Heirs v. Caddell's Executor, supra; Jenkins v. White, 298 Ill. 502, 131 N. E. 634. Where, however, testimony of a subscribing witness does not contradict a positive statement in the attestation clause, we can see no reason why the same weight should not be accorded to his testimony even though it is adverse to the will as to that of any other witness. This was apparently the view of the Wisconsin court in the case of In re Wilm's Estate, supra. From the statement in the opinion it appears that there was an attestation clause there, yet the witnesses were permitted to detail the facts indicating whether or not they were within the presence of the testator within the meaning of the statute. Plainly, the attesting witness might have one idea as to what constitutes the "presence of the testator" and the law another. There is nothing here to discredit the testimony of Mrs. Swift. She manifestly was not familiar with the formalities necessary to a proper execution of the will and her signature, so far as she could see, certified to nothing except what was actually done.

The burden was on the propounders of the will to establish the validity of its execution. No facts are recited by an attestation clause and the only evidence before the court is the testimony of Mrs. Swift which demonstrates that she did not sign the instrument in

the presence of the testatrix. Certainly, the propounders could have overcome the testimony of Mrs. Swift by other legal evidence if it was available but they have not done so. We are left therefore with nothing but the mere presumption of the validity of the will arising from the admitted genuineness of the signatures alone on the one hand and the direct testimony of Mrs. Swift, uncontradicted, on the other. We do not think that the court erred in taking the case from the jury.

Finally, it is asserted that because the statement of appeal filed in the circuit court did not, in terms, attack the validity of the execution of the will this question is not available to the contestants. The petition does allege that the paper in question is not Mrs. Poindexter's last will and testament, but, aside from this, under our practice, the burden was on the propounders in limine to establish the apparent validity of the execution of the will. Instead they have shown that the essential formalities were ignored.

Judgment affirmed.