### NUNN et al. v. WILLIAMS et al.

Court of Appeals of Kentucky.
Jan. 30, 1953.

E. B. Anderson and J. B. Anderson, Owensboro, for appellants.

Thomas E. Sandidge, Owensboro, for appellees.

MILLIKEN, Justice.

The appellants contested the will of Frances L. Williams because she allegedly lacked testamentary capacity and because of the alleged undue influence of the appellees. At the completion of the testimony, the trial judge instructed the jury to sustain the will and the case is here without benefit of the transcript of the evidence. The inability of the court stenographer to transcribe his notes because of his serious illness has resulted in our being presented with a narrative of the evidence signed by five members of the jury, the accuracy and unbiased nature of which is sharply questioned by the appellees as proponents of the will. We have decided to overlook the

question of the technical inadequacy of this presentation and to treat the record as properly before us.

The testatrix was 75 years of age at the time of her death on June 5, 1947. On May 12, 1947, she requested her lawyer to call at her home where she informed him that she wished to make a will and how she wished to dispose of her property. She had been ill for a good many years, her husband had died in the preceding March, and they had no children. On the day after his visit to her home, her lawyer returned with the draft of the will and read it to her in the presence of Dr. Coffman, her family physician for many years, and Mr. Pennebaker, a business associate of her late husband, both of whom she apparently had requested to be present for the purpose of witnessing her will. At her suggestion, her lawyer signed her name to it and she made her mark.

At the time of the execution of the will in May, 1947, the sufficiency of which is unquestioned, the nearest surviving relatives of the testatrix were her brothers, L. R. Nunn and Dr. T. H. Nunn, neither of whom benefitted under the will. L. R. Nunn died in 1949, and Dr. T. H. Nunn died in January, 1950. The will was probated on June 11, 1947, six days after the death of the testatrix. Two and a half years later, on December 23, 1950, the contestants who are the widows of L. R. Nunn and Dr. T. H. Nunn, and the latter's three children, nieces and nephews of the testatrix, filed the present action in the Circuit Court to have the probate of the will set aside. The estate was appraised at $47,-018.14, with two pieces of city real estate constituting the major portion thereof. The beneficiaries of the will were Rose Strobel, who it was stated in the will had resided with the family for twenty years, and Ollie Williams, who also had lived with the testatrix for a number of years. Oral Williams, a nephew and former business associate of her late husband, was made executor of the will.

In support of their allegation that the testatrix did not have testamentary capacity at the time she made her will on May 13, 1947, the appellants offered an assortment of evidence. There was testimony that Frances L. Williams had not enjoyed good health for many years; that she died of cancer; that demerol, a morphine derivative, had been administered to her over a long period of time; that the legatee, Rose Strobel, tried to keep people from seeing the testatrix and on one such occasion in 1946 the contestant Joe Nunn disregarded Rose Strobel's protests, saw his aunt, Frances L. Williams, who it is stated cried during his visit and said Rose Strobel was the cause of her unhappiness. Furthermore, a practical nurse who cared for the testatrix for five or six weeks in the summer of 1946 declared that she questioned Dr. Coffman at that time about the large doses of demerol he administered the patient. There was other evidence of this tenor, including testimony that nearly a gallon of fluid was removed from the patient on the day or day before the will was executed and that a larger dose of a pain killing drug was necessary on that occasion than normally was given the patient. It also was pointed out that the testatrix' husband had left $10,000 as a cash bequest to his niece, Ollie Williams, from which it should be inferred that Frances L. Williams' substantial bequest to Ollie Williams was unreasonable and unnatural and indicated that she did not realize what she was doing when she left her heirs, the contestants, out of her will.

Regardless of the testimony that the testatrix may have been either so weak physically and mentally or under the influence of narcotics at various times during her long illness, or that hostility apparently existed between Rose Strobel and the testatrix at one time or another, or that the testatrix was well educated and could have signed her will instead of making her mark as she did, or that she apparently failed to realize the death of her husband in March, 1947, the question still remains as to what evidence there is offered to show that the testatrix was not competent to make a will when she made this one.

■■ For the proponents the testimony of Dr. Coffman and Mr. Pennebaker, the attesting witnesses to the will, undoubtedly must have been sufficient to cause the Coun-

ty Court to grant probate of the instrument, and it certainly helped to cause the trial judge to direct the jury to sustain the will. Even if the testatrix was under the influence of narcotics at the time of the execution of the will, she still could be capable of making one and of knowing the natural objects of her bounty. There is no question here but that the testatrix signed the will by mark in the presence of the attesting witnesses and in the presence of her lawyer. Rose Strobel testified by deposition—one of the few bits of actual testimony with which we are favored—that she was present when the will was read to the testatrix and executed by her, and that it was the first information she had as to its contents. In their depositions, she and the executor, Oral Williams, testified as to the clear mentality of Frances L. Williams, and Ollie Williams said Frances L. Williams knew her a few minutes before her death nearly a month later. Even if we accept the contestants' narration of the testimony at face value, we find nothing that casts serious doubt on the mentality of Frances L. Williams at the time the will was executed. For example, the claim that one of the attesting witnesses stated that he did not hear the word "will" mentioned to testatrix before she signed the document and did not know whether Frances L. Williams knew she was executing her will would be entitled to little weight, even if true, because it is quite contrary to the attestation clause the witness admitted he signed. Poindexter's Adm'r v. Alexander, 277 Ky. 147, 125 S.W.2d 981; Barton's Adm'r v. Barton, Ky., 244 S.W.2d 770.

While there may have been an opportunity for the beneficiaries of this will to have exercised undue influence over the mind of testatrix because of their presence in her household, there is not a scintilla of evidence that they did do so. The disposition of her property which the testatrix made in the will was not unnatural in the factual background of this case. As quoted from Brent v. Fleming, 165 Ky. 356, 176 S.W. 1134, by Judge Rees in Whallen's Ex'r v. Moore, 248 Ky. 348, 356, 58 S.W.2d 601, 604:

" 'We have frequently written that it is not sufficient to show that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised, but some evidence must be adduced showing that such influence was actually exercised. Crump v. Chenault, 154 Ky. 187, 156 S.W. 1053; Childers' Ex'r v. Cartwright, 136 Ky. [498] 505, 124 S.W. [802] 804. And by evidence is meant something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of proof, or having fitness to induce conviction. Clark v. Young's Ex's, 146 Ky. 377, 142 S.W. 1032. It is also the rule that any reasonable influence obtained by acts of kindness or by appeals to the feelings or understanding, and not destroying free agency, is not undue influence. On the other hand, undue influence is such influence over the mind of the testator as destroys his free agency and constrains him to do against his will what he would otherwise refuse to do, whether exerted at one time or another, directly or indirectly, if it so operated on his mind at the time he executed the paper.' "

Certainly, in the case at bar, there was no destruction of the testatrix' free agency, for she sent for her lawyer, a reputable member of the bar, for the purpose of making a will and told him what she wanted.

We have not detailed all of the assertions of the contestants in their narrative account of the testimony, but suffice it to say that the omitted assertions are cumulative in nature, remote in their application, and in several instances wholly incompetent.

We conclude that the trial judge properly instructed the jury to sustain the will. Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877.

The judgment is affirmed.