## ROUGH et al. v. JOHNSON et al.

Court of Appeals of Kentucky.

May 7, 1954.

Rehearing Denied Jan. 28, 1955.

H. H. Murray, Louisville, for appellants.

Carl K. Helman, Louisville, for appellees.

CAMMACK, Justice.

This is an appeal from a judgment setting aside the will of Margaret S. Yeakel on the ground of alleged undue influence exerted over her by the appellant, Charles I. Rough. Mrs. Yeakel was 65 years of age and unmarried at the time of her death in December, 1951. Mrs. Yeakel lived in New York for a number of years prior to her return to Louisville in 1947. She was ill when she returned and she made her home with her sister, Mrs. Carrie B. Ochsenhirt, one of the appellees, for a little less than a year. She then moved into the home of a friend. Shortly thereafter she purchased a home on Edgeland Avenue for $16,000. She advertised for roomers, and early in November the appellant, Charles I. Rough, totally unknown to Mrs. Yeakel, rented a room from her through her ad. Rough, who was in his early forties, had retired from the Marines and was a student at the University of Louisville. He said he and Mrs. Yeakel, who appeared to be much younger than her actual age, became interested in each other and began having sexual relations after he had been in her house three weeks. On the third of January, 1949, Mrs. Yeakel went alone to the office of a reputable attorney in Louisville and had him draw up a will leaving all of her property to Rough.

Rough said it was some time later that he learned the will had been made. There was evidence that he asked Mrs. Yeakel to be certain the will was legal and that, subsequently, she had it notarized.

The attack was made upon the will by Mrs. Yeakel's heirs. They asserted that Rough had exerted undue influence over her because of the close relationship existing between them after he had lived in her home only a few weeks. According to Rough's testimony, the will was made some 40 days after the couple began living together. It was asserted by the heirs that during the Fall of 1949 Mrs. Yeakel said, while on a trip through Indiana with some of them, that she planned to leave her property to them when she died. They said also that, during the latter months of Mrs. Yeakel's life and especially while she was bedridden, Rough was always present when they visited her and that he ran the house and dominated the conversations.

Rough said that, shortly after he moved into Mrs. Yeakel's home, she asked him to take some of his meals with her, which he did. Rough said also that he did not know of the contents of the will until it was opened in the presence of Mr. Daniel Henley on the morning of Mrs. Yeakel's death; although he did have in his possession a sealed copy of the will which Mrs. Yeakel had given him.

The instructions to the jury placed emphasis on the fact that Mrs. Yeakel and Rough were living in adultery; and, in effect, the jury was told that if they believed that Rough had come to dominate Mrs. Yeakel through their sexual relations, they should find against the will. The case presents rather an unusual situation. Rough and Mrs. Yeakel were complete strangers when he went to live in her home in the Fall of 1949. Shortly thereafter they became very much interested in each other and began living together. Rough had sufficient income to support himself and was attending the University of Louisville. According to the appellees' proof, Mrs. Yeakel had had a very close relationship with a man to whom she was not married when she lived in New York. There is no evidence whatever that Rough knew Mrs. Yeakel planned to make a will in January 1949, some 40 days after the couple became interested in each other. The attorney who wrote the will said Mrs. Yeakel seemed to know what she wanted to do and appeared to him capable of making a will. In this connection, there was no evidence that Mrs. Yeakel was of weak mentality. Considerable emphasis is placed upon Rough's domination of the household during the latter months of Mrs. Yeakel's life, but it must not be overlooked that the will was made some three years before she died.

Will cases involving undue influence usually present very difficult problems. It is not alone sufficient to show an opportunity for undue influence. In Nunn v. Williams, Ky., 254 S.W.2d 698, we pointed out we have frequently written it is not sufficient to show only an opportunity to exercise undue influence or that there was a possibility that such influence had been exercised. We said that there must be some evidence of probative value adduced to show that undue influence was actually exercised. There must be a destruction of free agency. The undue influence must be such as to influence the mind of the testator so as to destroy his free agency and to cause him to do against his will what he would otherwise have refused to do. Of course such influence may be exercised directly or indirectly. But always it is paramount to show that the influence was brought to bear at or prior to the time of the execution of the will. Sexual intercourse over a prolonged period is generally considered a mutual affair when engaged in voluntarily by mature persons. Actually, Mrs. Yeakel was some 20 years older than Rough. Both parties had lived lives from which it could be presumed they knew at least something of the facts of life. We are of the opinion that the relationship was not one entered into unwillingly on her part so as to bring about a situation whereby Rough exercised such undue influence over Mrs. Yeakel as to cause her to will him all of her property. See Porschet v. Porschet, 82 Ky. 93, 56 Am.Rep. 880, and Annota-

tion—Wills—Presumption of Undue Influence, 66 A.L.R. 228.

Under the circumstances we think a verdict should have been directed upholding the will.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.