## Wood v. Corcoran, Admr., etc.

(Decided February 25, 1921).

## Appeal from Kenton Circuit Court
## (Criminal, Common Law and Equity Division).

1. Wills—Scintilla Rule—Mental Capacity.—The scintilla rule prevails in will contest cases the same as in others and applies to the issue of mental capacity of the testator as well as to other issues in such cases; but the quantum of testimony necessary to raise a scintilla of evidence must be such as to induce conviction and not consist in vague, uncertain and isolated acts and circumstances which are consistent with rationality, although they may be inconsistent with the usual normal course pursued by the generality of mankind. It is furthermore the trend of later opinions of this court, in applying the scintilla rule in will contests and in other cases, to discard the illogical practice of drawing a distinction between the quantum of testimony necessary to create a scintilla of evidence and the quantum necessary to sustain a verdict as not being flagrantly against the evidence.

2. Wills—Mental Capacity—Burden of Proof.—Where a will is rational and equitable upon its face the burden is upon the contestant to sustain the grounds of contest and in such cases nonexpert witnesses may give their opinions concerning the testator's mental capacity, but such opinions not based on sufficiently convincing facts to support them will not authorize the setting aside of the will, but where the facts testified to by such witnesses are sufficient, when measured by common experience, to show a derangements of mind, thir opinions based upon such facts (as strengthened by the facts themselves) will authorize a submission of the issue to the jury and, unless overcome by sufficient testimony, will sustain a verdict setting aside the will.

MYERS & HOWARD for appellant

MAURICE L. GALVIN, JOHN T. MURPHY and WILLIAM A. BYRNE for appellee.

Opinion of the Court by Judge Thomas—Reversing.

The appellant, Isabella Wood, a distant relative of Mary J. Reynolds, deceased, prosecuted an appeal to the Kenton circuit court from a judgment of the Kenton county court, probating the will of the decedent, seeking a reversal of the probate judgment upon the sole ground that the testatrix, at the time of the execution of her will (January 16, 1911) and at the time of the execution of the codicil thereto (September 6, 1915), was of such unsoundness of mind as incapacitated her in law to execute

either of them.   The contestees, consisting of the administrator with the will annexed (the nominated executrix refusing to qualify) and the devisees therein denied the grounds of contest and the court at the conclusion of all the evidence sustained their motion for a peremptory instruction directing a verdict sustaining the will and the codicil and upon the verdict   returned   in   accordance therewith judgment was rendered, to reverse which contestant prosecutes this appeal.

It will thus be seen that the principal question for determination is one of fact, which must be solved from the testimony introduced and an application of the law as announced by this court relating to testamentary capacity to the facts.   An examination of the   cases   from   this court involving will contests upon this and other grounds (upon some of the most recent of which the court based its judgment, and which we will hereafter refer to) will demonstrate that in the main each case must depend upon its own peculiar facts as disclosed by the testimony and, as we construe the cases, there is no difference between the quantum of testimony necessary for the submission of the case to the jury of the issue of mental capacity of the testator, and the issue of undue influence, as was held by the trial court.   It concluded that in the later opinions of this court it was held that the rule commonly known as the "scintilla rule" did not apply to the issue of mental capacity of the testator, but did apply to that of undue influence.   We find no such distinction in our opinions; but there has been a marked tendency of late in will contests, as well as in other cases, to modify the scintilla rule, as it has sometimes been applied in former cases, so as to enlarge the quantum of evidence necessary to create it, and to narrow the difference between that evidence and that deemed necessary to save a verdict from attack upon the ground that it is flagrantly against the evidence, and to bring the two nearer   together.   In   other   words, this court has, in recent years, approached toward the conclusion (not yet adopted) that there is no logical reason for submitting a case to the jury, under the doctrine of the scintilla rule when a verdict, supported only by a scintilla of evidence, would be set aside as flagrantly against the testimony.   Cases pointing in that direction are, Crump v. Chenault, 154 Ky. 187; Poll v. Patterson, 178 Ky. 22; Langford v. Miles, 189 Ky. 515, and others referred to therein.   It is only to this extent has there been any modification of the practice in the particulars referred to.

The later cases cited by counsel, and which it is said controlled the trial court in rendering the judgment appealed from, are Cecil v. Anheir, 176 Ky. 198; Schrodt v. Schrodt, 181 Ky. 174; Bailey v. Bailey, 184 Ky. 455 and Trustee of Epworth Memorial Methodist Church v. Overman, 185 Ky. 773. To these may be added the still later one of Langford v. Miles, *supra.* It was, in substance, held in those cases that where a will was rational and equitable upon its face the burden was upon the contestants to establish the grounds of contest, including that of mental incapacity, and that such burden was not discharged by the introduction of evidence wanting in substance and relevant consequence, and which consisted only in vague, uncertain or irrelevant matter not carrying the quality of proof nor having fitness to induce conviction, and further, that the *opinions,* as to the mental capacity of the testator, of non-expert witnesses alone in the absence of facts supporting such opinions would not authorize a submission of that issue to the jury, nor would facts of the non-probative nature, as above indicated and upon which the opinions of the non-expert witnesses were based, authorize such submission. A reading of the cases above cited, and those referred to therein will show that this court has consistently held that occasional and isolated facts concerning the actions and conduct of the testator which prove no more than to show him an eccentric individual, or as one curious and queer in his disposition and conduct, or whose actions which may be somewhat out of line with the course of conduct usually pursued by the generality of mankind, will not, of themselves, be sufficient to establish mental incapacity; but it has never been held that where the proven acts are so far afield, and constitute such a wide departure from the usual course of conduct of normal individuals as to indicate a derangement of mind, the case should be taken from the jury, although the witnesses testifying to the facts were non-experts and their opinions based upon such facts were the only opinions proven in the case. In some of the cases referred to, opinions were ventured by the witnesses, but neither they nor any other witnesses testified to any irrational act or conduct on the part of the testator; while in others of them it was held that the supposed irrational acts or conduct, testified to, were not such, because they did not show a sufficient departure from rational conduct to authorize a finding of mental incapacity.

In this case the testatrix was 78 or 79 years of age when she executed the will and about 83 years of age when she added the codicil. She was born in Ireland and moved to this country while quite young and married in this country, her husband dying some 18 or 20 years before her death. From that time on she largely lived the life of a recluse, occupying some property left to her, perhaps by her husband, located in Covington. She had no children nor relatives, except appellant and her daughter and the latter's children. Testatrix seems to have been considerably attached to the appellant and her daughter, both of whom were widows, and frequently visited them at their joint home in Cincinnati, Ohio. In 1914 testatrix suffered a stroke of paralysis and was carried to a hospital in Covington, Ky., where she remained nine weeks. Immediately appellant's daughter went to nurse her and did so until the expiration of the nine weeks' confinement when testatrix was moved to the home of appellant and her daughter in Cincinnati, where she lived some eighteen months, when all of them removed to the property of testatrix in Covington, which they jointly occupied till the latter's death in 1918. The testatrix was practically helpless after the stroke of paralysis and had to be tenderly cared for constantly thereafter, all of which services were cheerfully rendered by appellant and her daughter.

The will devised to appellant's daughter $500.00, and the codicil gave the daughter the right to occupy free of rent the house where testatrix died for a term of three years after her death. The appellant was given in the will only one dollar, and the remainder of the property, after the payment of funeral expenses and debts, was devised to charitable purposes.

Without stating in detail the testimony of the witnesses for appellant, it is sufficient to say that some seven or eight of them (not including interested parties) testified in substance, and without contradiction, that the testatrix was penurious, curious and exceedingly eccentric; that she was very much of a recluse, scarcely ever leaving home and was exceedingly slovenly in her dress, on some occasions going upon the streets with her clothing wrong side out; that prior to, at the time of, and succeeding the execution of the will she almost constantly was engaged in the most unnatural conduct of crying, giggling, singing and dancing by herself and while alone in her room, and also in the back yard of her premises in the day time, and that these different varities of acts and

conduct followed each other in rapid succession and would frequently be accompanied with loud laughter on her part. She was seen by a witness sitting on her front porch late at night dressed in her night robes with the thermometer around zero. They all testify that in her conversation she would frequently lose the subject and go to another one, thereby talking very disconnectedly. In return for a favor, she carried on one occasion to a neighbor, a dish consisting of stewed potato peelings and lemon rinds, and she told some of the witnesses when her eyesight began to fail that her eyes were filled with little devils, and she at least one time was seen praying and singing to the clock in her room. She was indifferent about the character of clothing she wore. According to some of the witnesses, she would wear heavy clothing in the summer time and light ones in the winter time. In papering one of the rooms of her house she put one kind of paper on one wall and another kind on the other one. Some of the witnesses furthermore testified that for at least some years prior to the execution of the will the testatrix had a blank, imbecile look on her face, which they were unable to describe, but which they pictured in such a way as to carry conviction, provided the witness was telling the truth. Other acts of conduct, equally as far removed from that of an undoubtedly rational person, are testified to, and while, perhaps, a single instance of the happening of either of them might not be sufficient to uphold a verdict setting aside the will, we are by no means prepared to say that all of them considered together, with some of them so frequently engaged in as to show an almost constant practice of the testatrix, did not constitute sufficient evidence of mental unsoundness to submit that issue to the jury, or to uphold a verdict sustaining that ground of contest. It is true that the draftsman of the will, a physician, the witnesses to the will and some others stated, in substance, that while the testatrix was curious, queer and eccentric, that they regarded her mind as strong as it had always been and that, according to their opinions, she possessed testamentary capacity. About these witnesses it may be said, however, that they were very infrequently with or about her, while the witnesses testifying for appellant, as above indicated, were her near neighbors and associates, some of them living in the same house with her, while others resided in an apartment adjoining hers. But, be this as it may, the question before

us is whether there was sufficient testimony to authorize
a submission of the case to the jury, and we entertain no
doubt but that the answer should be in the affirmative.

It results therefore that the judgment should be and
it is reversed with directions to grant a new trial and for
proceedings consistent with this opinion.