## Thompson, et al. v. Jordan, et al.

(Decided January 31, 1928.)

### Appeal from Bracken Circuit Court.

1. Wills.—In will contest, where there was testimony that testator was prefectly competent to transact business and evidence to the contrary, it was within jury's province to reconcile conflicting testimony and determine truth of opposing contentions.

2. Wills.—In will contest, evidence as to mental competency of aged testator afflicted with epilepsy held sufficient to support finding that he was without testamentary capacity.

3. Evidence.—Where facts and circumstances relied on are insufficient to show testamentary incapacity, opinions of nonexpert witnesses, based thereon, are insufficient to justify rejection of will.

4. Evidence.—Opinions of nonexpert witnesses, not predicated on facts of probative value, do not alone constitute a scintilla of evidence.

5. Wills.—Where acts shown, covering long period, constitute a departure from usual course of conduct of normal individuals, and indicate derangement of mind, court is justified in submitting to jury determination of issue of testamentary capacity.

M. HARGETT for appellants.

M. J. HENNESSEY for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Charles Savage Thompson died in Bracken county, Ky., in June, 1924, and at the next July term of the Bracken county court, a paper purporting to be his last will and testament was admitted to probate. By the terms of the will a farm of 112 acres in Bracken county was devised to his two children, Robert Eugene Thompson and Loretta Marie Jordan, share and share alike, coupled with a provision that, in the event the daughter should die without children, the whole of said land was

devised to the son for life, and at his death to his three children, Charles O. Thompson, Dixie Louise Thompson, and Paul Pepper Thompson. The will also provided that, if there were other children born to said son, either by his present or any future marriage, the said testator did not want such children to have any part of his estate. The son, Eugene Thompson, was appointed executor of the will without bond, and duly qualified. The daughter, Loretta Marie Jordan, being dissatisfied with the terms of the will, prosecuted an appeal to the Bracken circuit court, where the contest was tried before a jury, resulting in a verdict that the paper offered for probate was not the last will and testament of Chas. S. Thompson. A new trial was requested and refused. This appeal is prosecuted by the executor and his wife and the three infant children mentioned in the will to reverse the judgment entered upon the finding of the jury.

The sole issue submitted to the jury was whether Charles Savage Thompson possessed testamentary capacity.

Upon this appeal, it is argued that the evidence was not sufficient to sustain the verdict, and that a peremptory direction to probate the will should be given.. This requires an examination of the evidence adduced at the trial.

Charles Savage Thompson was a widower, 64 years old, and for many years had been afflicted with epilepsy. He would fall in spasms or convulsions several times a day, and his mind and strength were both impaired. He had been bitten by a dog many years before, and labored under the belief, which the doctor thought a delusion, that his affliction was caused by the injury. Dr. Stevenson testified that, when he was first called to see Mr. Thompson, which was more than a year after the will was signed, he was pretty well unbalanced, and was having spasms or convulsions frequently. He seemed to be well nourished physically, but had a blank appearance, and had suffered a softening of the brain, resulting from paresis, a disease of progressive development. During the last few weeks of his life he had no mind at all, and from the beginning of his affliction he was not in condition to transact business. He was taken to Cincinnati on two occasions to consult a specialist in mental diseases. The doctor expressed an opinion that he hardly thought testator had sufficient capacity to know the extent, value,

or character of his property, the natural objects of his bounty, or his duty to them, or to dispose of his property according to a fixed purpose of his own. Dr. Browning testified that he had known Mr. Thompson pretty much all his life, and had treated him for two or three years and maybe longer. In answer to a question as to whether he possessed testamentary capacity, the doctor said:

> "I don't think he was perfectly rational after he had these attacks, and I don't think he was at himself just as he should be. Very few people are that are epileptics."

The disease centers in the spinal cord, and convulsions come on with frequency, resulting in complete unconsciousness and rigidity of the body for several minutes, followed by weakness, indifference, and taciturnity.

It is also shown that the testator had a habit of taking little things, and his son told the merchant to charge to his account anything that his father took, but not to oppose him. The evidence did not show that Mr. Thompson was a kleptomaniac, but, like Autolycus, "a snapper-up of unconsidered trifles." He failed to recognize persons with whom he was well acquainted. He stopped at a neighbor's house, thinking he was at home, and calmly seated himself to peruse his newspaper, frightening the neighbor's family. He was easily offended, and on one or more occasions left home because of his displeasure at some trivial occurrence. A number of his neighbors testified that he did not possess testamentary capacity, and gave numerous instances of eccentric conduct upon which they based the opinions. He lived with his son awhile, then with his daughter, changing from the one to the other on some fancied grievance.

There is other evidence to the effect that, when he was not laboring under the immediate effects of his affliction, Mr. Thompson was perfectly competent to transact business, and possessed testamentary capacity, but, with evidence to the contrary, it was peculiarly the province of the jury to reconcile the conflicting testimony, and to determine the truth of the sharply opposed contentions.

A careful review of all the evidence in this record is convincing that it was sufficient to support the verdict of the jury.

The appellants, in a carefully and well-prepared brief, argue that the evidence as a whole was not suffi-

cient to take the case to the jury or to sustain the verdict, and rely upon four will cases decided by this court.

In Frazie's Executrix v. Frazie, 186 Ky. 613, 217 S. W. 668, this court did not order the will probated, but, after an exhaustive analysis of the testimony, held that the evidence there was not sufficient to sustain a verdict rejecting the will. In that case the testimony showed that the testator was capable of taking care of himself in all business transactions. He had lost his sight and hearing, and was physically feeble, but still retained much skill and adroitness. The court said:

> "Old age alone does not disqualify one from disposing of his property by will. No court has ever so held, yet contestants have little else to entitle their cause to consideration than the extreme old age of the testator and his defective hearing and eyesight, added to his decrepit physical condition which is largely due to his broken hip or limbs. As one grows older his sensibilities are dulled, his eyesight dimmed, and his hearing less acute, but this is not mental unsoundness nor are such facts alone entitled to be considered as tending to prove testamentary incapacity."

The case was quite different in its facts from the one we have here.

In Langford v. Miles, 189 Ky. 515, 225 S. W. 246, a review of the evidence and the pertinent authorities brought the court to the conclusion that the will there involved should be probated without the useless expense of another trial. The testator in that case was 77 years of age, and was afflicted with chronic diarrhea. The disease troubled him mostly at night, and there was no proof that it impaired his testamentary capacity. The doctor testified that his patient would have spells or spasms from which he would suffer considerable pain, which had a weakening effect upon his mind, but he could not state anything of the testator's mental condition at the time the will was made. The most that could be said as to the doctor's testimony in that case was that he doubted the testator's capacity to make a will, but no conversation or conduct indicating any mental deficiency was proven. The doubt of the doctor as to his capacity to make a will was based on testator's physical condition at the time. Comparison of the facts stated in the Lang-

ford opinion with the facts of the present record differentiates the two cases.

In Wigginton's Executor v. Wigginton, 194 Ky. 385, 239 S. W. 455, the lower court was directed to probate the will, if the evidence should be the same on the second trial. Testator had manifested some hostility towards his children, and upon that circumstance alone some of the witnesses based an opinion that he did not possess testamentary capacity. He manifested anger amounting at times almost to rage, but there was no evidence of mental derangement comparable to that contained in the record before us.

The court said:

> "Looking beyond the nonexpert opinions in this case to the competent facts on which they are based, there are to be found isolated acts of indiscretion, and perhaps injustice, which are not uncommon in a rational person of the age, temperament and disposition of decedent; and while these acts and circumstances would corroborate substantial evidence, they alone, or in conjunction with the proven strain of insanity in testator's family and the unequal disposition of his property, are not, in view of all the facts and circumstances shown in the evidence for contestants, sufficient to induce conviction or to constitute a scintilla within the meaning of that term as construed in the authorities cited."

In Franzman's Executors v. Nalty et al., 208 Ky. 686, 271 S. W. 1034, a verdict rejecting the will was set aside as flagrantly against the evidence, but the court said:

> "While we have experienced some difficulty in determining whether the evidence offered by the contestants' was sufficient to warrant the court in submitting the case to the jury, we have reached the conclusion that when all the facts and circumstances proven in evidence are taken and considered together, the question was one properly for the jury."

It will be seen, therefore, that none of the cases relied upon justify a reversal of the judgment in this case.

On the other hand, the case of Carter v. Carter, 216 Ky. 732, 288 S. W. 666, cited by the appellee, more nearly parallels the present case. Indeed, the evidence to sustain the capacity of the testator to make a will was

stronger there than it is here. The appellants is that case introduced no medical testimony, but relied entirely upon the opinions of nonexpert witnesses. Compare Fitzgerald v. Fitzgerald, 201 Ky. 813, 258 S. W. 681.

It is the settled rule in this state that where the facts and circumstances relied upon are insufficient to show testamentary incapacity, the opinions of nonexpert witnesses based thereon are insufficient to justify the court in rejecting a will. Wood v. Corcoran, 190 Ky. 621, 228 S. W. 32. The opinions of nonexpert witnesses, not predicated on facts of probative value, do not alone constitute a scintilla of evidence. But, where the acts shown covering a long period are so far afield as to constitute a departure from the usual course of conduct of normal individuals, and indicate a derangement of the mind, the court is justified in submitting to the jury the determination of the issue of testamentary capacity. Indeed, a jury is the tribunal established by our system of judicature for the final determination of. such issues of fact. Palmer, Executor v. Smith, 211 Ky. 105, 276 S. W. 1055.

In this case there was proven numerous instances of delusions on the part of the testator and of conduct entirely at variance with the normal course of persons not mentally afflicted. Even though the doctors in this case did not agree as to the cause of testator's affliction, they did agree in the conclusion as to its fatal effect upon his capacity to make a will. The verdict of a properly instructed jury will not, in such a case, be overturned.

Upon consideration of the whole case, the court has concluded that the evidence required the submission of the issue of testamentary capacity to the jury, and fully sustains the verdict.

Judgment affirmed.