## Oder's Executor, et al. v. Webster, et al.

(Decided May 18, 1928.)

### Appeal from Grant Circuit Court.

1. Wills.—In will contest on ground of aged testatrix's mental incapacity, evidence held sufficient to require submission of issue to jury and to support finding that testatrix was without testamentary capacity.

2. Wills.—In will contest on ground of aged testatrix's mental incapacity, in which physician testified that at time of execution of will testatrix was suffering from an affliction which came on and operated slowly but surely and would eventually result in entire mental destruction followed by death, exclusion of contestants' evidence that testatrix was judicially found to be an imbecile about five years after execution of will held error, if for no other reason than that it corroborated physician's testimony.

ROUSE & PRICE for appellants.

F. A. HARRISON and J. J. BLACKBURN for appellees.

Opinion of the Court by Judge Thomas—Affirming.

On April 18, 1921, Sally F. Oder, a resident of Grant county, and who was then 78 years of age, executed her will, which was probated in the county court of Grant county on December 13, 1926, she having died some few days prior thereto. Contestants and appellees, Maggie Webster and others, who were her only surviving heirs, contested the will by appealing from the order probating it to the Grant circuit court, and at the trial of that appeal the court by its instruction submitted to the jury the contest ground of mental incapacity of testatrix, but declined to submit the other ground of undue influence, and the jury found by its verdict that the paper was not the last will and testament of the testatrix. The motion for a new trial by contestee and appellant W. T. S. Blackburn (who was made executor of the will as well as a substantial devisee therein) was overruled, and from the judgment pronounced on the verdict he prosecutes this appeal. Only two grounds are urged in brief of counsel for a reversal of the judgment, which are: (1) Error of the court in overruling the executor's motion for a peremptory instruction, and (2) that the verdict of the jury on the sole issue submitted to it (mental capacity of the testatrix) was and is flagrantly against the evidence. Since both grounds are di-

rected to the insufficiency of the evidence they will be considered and disposed of together.

Testatrix, as we have said, was 78 years of age at the time she executed her will. Her husband, somewhat older, was then alive, but he died in June, 1926, preceding her death in the following December. At the time of the execution of the will Mr. and Mrs. Odor had one child living who had several years before married a Mr. Williams and to whom some three or four children were born, but they had all died and the daughter seems to have largely earned her own living by working the greater part of the time away from home. Some month or more following the execution of the will the daughter became afflicted with some ailment and came to the home of her parents, where she lingered until about August 1 of that year and died.

The will devised to the daughter "my gold watch and chain which I value at fifty dollars, two silver spoons that were handed down from my grandparents, and twenty-five dollars in cash." The third clause bequeathed to the husband of testratrix all of her household and kitchen furniture, live stock and chickens, "and the use and benefit of any real estate that I may own or have an interest in at the time of my death, for and during his natural life;" after which she directed that the real estate and the specific personal property devised to her husband be sold, and that the cash on hand at her death and her other personal property not specifically devised to her husband, should constitute a trust fund "for the use and benefit of my husband, William Oder, and my daughter, Eudora Alice Williams, according to the directions hereinafter set out."

Subsequent directions were, that her executor should pay to her husband the income from the trust fund created by her during his life and that at his death the same trust fund, as augmented by the sale of her real estate and specific personalty devised to her husband, should be for the benefit of her daughter, Mrs. Williams, and the income therefrom to be paid to her if she survived Mr. Oder, and that upon the death of the survivor (either her husband or her daughter) the entire trust fund was devised to "W. T. S. Blackburn (appellant), if living, and if dead to his children." Neither the husband nor the daughter of the testatrix survived her, and upon her death, under the terms of the will Blackburn, a stranger in blood, took the entire estate, amounting in the aggre-

gate to about $7,800. It appears in the record that on the same day testatrix executed her will her husband executed an exactly similar one with Blackburn as absolute devisee in remainder in each of them. The latter had been to the home of the two old people on the morning of that day, and after returning therefrom he approached the attorney who wrote the two wills and informed him that Mr. Oder had suggested to witness (Blackburn) that he was very desirous that the attorney should prepare the papers about which Mr. Oder alone had consulted with the attorney on the day before, but as to the nature of the papers Blackburn professed profound ignorance. Within a short while after the attorney received that message and on the same day he went to the Oder home in the outskirts of Williamstown, and there accompanied him the other witness to the will and Mr. Blackburn. When the parties arrived Blackburn did not tarry in the room where the attorney met the two old people whose wills he had prepared, but went elsewhere in the house or on the premises and was absent during the entire transaction.

The attorney testified that he had never seen the testatrix before and he had very little conversation with her, and he repeats no language attributed to the testatrix. He read the two wills, and they were each executed and witnessed by the attorney and the witness whom he had carried along for the purpose and who testified that he was requested to accompany the attorney by Mr. Blackburn. Some time later, according to Blackburn, Mrs. Oder delivered to him a sealed envelope with directions to preserve it; but he says that she did not state what it contained, nor did he learn from any source whatever on the day that the wills were executed that any such papers were even contemplated, much less prepared, and their execution consummated.

The substance of the testimony of the attorney was that from what he saw and observed he detected nothing wrong with the mental condition of Mrs. Oder, and Blackburn testified that he had known her for a great number of years, perhaps all his life, and that upon the day the will was executed her mentality was normal. Other witnesses who were her neighbors at different times and for different periods gave it as their opinion that so far as they observed the testatrix, on or about the time she executed her will, possessed the requisite mental capacity to do so, and her physician testified that he had

seen her professionally for some time preceding and following the execution of the will, and that his visits upon her were "at intervals; probably sometimes it would be a month; sometimes two months; sometimes oftener. She had no serious sick spells." On being asked, "Did she have any stroke of any sort within your acquaintance with her?" he answered, "Not to my knowledge." Upon cross-examination he testified that in walking "she had some interference with her gait," and that there was "a general impairment." When asked if such conditions did not indicate a form of paralysis, he answered: "Not that I know of." He was also asked, "Did you notice the drooping of the eyes?" and he answered, "A slight drooping. Q. What was the cause of that? A. Might be involvement, I judge it was, of the facial nerve." Upon being further asked: "Q. Wouldn't that he something the matter with the brain? A. Not particularly. It might be, and then it could be some interference with the nerve which, of course, has its origin in the brain; the interference might be external to the brain. Q. Could be in the brain or external to the brain? A. Could be."

A number of witnesses who frequently saw testatrix about the time she executed her will and some of whom were in her home for long periods of time testified that, according to their observation of her acts, movements, conduct, and conversation, they were of the opinion that she was greatly impaired mentally. They testified to many incidents fortifying their conclusion, some of which were of but little consequence, while others were quite convincing of the correctness of the opinions expressed by them. For several weeks during the illness of the daughter, which was some two or three months after the execution of the will, Dr. O'Hara was at the Oder home as the daughter's physician frequently and sometimes more than once per day. He observed and conversed with the testatrix, and described the shuffling movements of her right limb while walking and the apparent uselessness of one of her arms, and described the drooping of her eyes and the twitching of the eyelids. He also observed her conversation and at once came to the conclusion that the giving of medicine to his patient could not be trusted to her mother. From all the sources of his information gathered by immediate contact and conversation with the testatrix he became convinced that she was then, and had for some time been, suffering from

"some apoplectic attack," the inevitable symptom of which he observed and described and which he denominated as dementia paralytica. In describing it he said:

"It is a disease that comes on slowly, insiduously, wrecks the brain, is attended by apoplectic marasmus, a paralysis of different muscles, sets of muscles of the body; it affects the memory, sometimes brings the patient rapidly to a condition of total imbecility, marasmus, total imbecility; she had had the paralytic portion of it, I could tell by the way she tried to do things; I watched her around there; she didn't know what she was doing half the time."

The contestants offered to prove that in June, 1926, at an inquest held before the county judge of the county, testatrix was judicially found to be an imbecile and a person of unsound mind, and appellant, Blackburn, was appointed her committee. The court excluded that testimony, but it was properly made a part of the record and we think the exclusion was error; if for no other reason it corroborated the testimony of Dr. O'Hara, wherein he said that the affliction to which he testified and which he described was one that came on and operated slowly but surely after it developed and that it would eventually result in entire mental destruction followed by death.

We deem it unnecessary to further recite the testimony, since the brief synopsis we have given is amply sufficient to require a submission of the issue to the jury and likewise sufficient to support its verdict.

But learned counsel for appellant in their brief insist that the testimony of Dr. O'Hara was and is "worthless," and in support of that contention they cite the text of Page on Wills (2d Ed.) sec. 697, in which it is said:

"If the expert gives his opinion upon the facts put before him by an hypothetical question the value of such opinion depends upon whether the evidence establishes such facts or not. . . . If the evidence fails to establish all the facts set forth in the hypothetical question, the opinion based upon such facts is worthless; for the facts which the jury reject may be the controlling facts in the question of sanity."

It will be observed that the text asserts no more than that, if the opinion of the expert is based upon facts which the other testimony entirely disproves, then his opinion becomes worthless, but we have no such case here. While Dr. O'Hara because of his professional qualifications would have been a competent expert witness to express his opinion upon facts that might be detailed by other witnesses (and in which case he would be such an expert witness as Mr. Page was referring to in the excerpt from his text), but he in this case was more than a mere expert witness; he was also a personal contact witness and based his opinions, not on the observations and testimony of others, but on facts within his knowledge, and which is an entirely different case from the one the learned author was talking about in the text relied on.

Counsel also rely on a number of cases from this court wherein it was held that the testimony in cases like this was insufficient to support either ground of contest, among which are Langford v. Miles, 189 Ky. 521, 225 S. W. 246, and Clark v. Young, 146 Ky. 377, 142 S. W. 1032, and others referred to therein; but on examination it will be found that there is a wide gulf separating the facts of those cases from those testified to in this one. This case in its facts conforms very much to those found in the ones of Wood v. Corcoran, 190 Ky. 622, 228 S. W. 32; Thompson v. Jordan, 222 Ky. 788, 2 S. W. (2d.) 640, and others referred to in those opinions. Upon examination of the latter opinions it readily will be seen that the court did not err in submitting this case to the jury, nor was the verdict sustaining the ground of mental incapacity flagrantly against the evidence.

Perceiving no error prejudicial to the substantial rights of the appellants, the judgment is affirmed.