## Trosper Coal Co. v. Crawford

(Decided February 13, 1913.)

### Appeal from Knox Circuit Court.

1. Master and Servant—Masters' Liability to Servant—Safe Place to Work—Mines.—It is the duty of mine owners, where slate has been falling from the roof of a mine entry, either to remove the slate until the roof arches itself or to timber it, so as to make it a reasonably safe place for their employees to work in.

2. Master and Servant—Question for the Jury—Negligence of Master.—In an action for injury, due to slate falling from roof of a mine entry, although the weight of the evidence as to the seasonable and proper inspection of the roof, by the owner of the mine, is with defendant, evidence that slate had been falling, for some time before the accident, to such an extent as to make the entry unsafe, and that the owner knew of this condition but took no steps to remedy it, is some evidence of negligence and authorized the submission of the case to the jury.

3. Appeal—Review—Verdict—Amount of Recovery.—Where the evidence shows that plaintiff, because of his injury, lost not more than ten weeks' time, suffered no diminution of his earning power, and was not such as to warrant the jury in finding that his injury was permanent, a verdict for $2,150 will be set aside as grossly excessive.

4. Evidence—Relevancy and Competency—Facts Relevant to Particular Issue.—In an action for personal injuries, on the issue of impairment of earning power, evidence of the reasons or motive of the injured employe for resuming work after his injury should be excluded as irrelevant.

5. Evidence—Competency—Admissible by Reason of Admission of Similar Evidence by Adverse Party.—Upon an issue as to the reasonably safe condition of a mine entry to work in, evidence of the faulty condition of the roof of the mine in parts, other than that where the injury occurred, is competent and admissible to controvert the evidence of the adverse party that he had made a seasonable, competent and thorough inspection of the roof of the mine entry where the accident happened.

6. Trial—Instructions to Jury—Repetition.—An instruction, or so much thereof as is covered by a previous instruction, should be omitted as being a repetition.

P. D. BLACK and BLACK, BLACK, GOLDEN & OWENS, for appellant.

J. M. ROBSION, for appellee.

OPINION OF THE COURT BY JUDGE LASSING —Reversing.

George Crawford, while in the employ of the Trosper Coal Company, in its mine in Knox County, Kentucky, in the capacity of mule driver, was injured by falling slate. He brought suit to recover for the injury, upon the theory that the company had failed to furnish him a reasonably safe place in which to work. The company denied liability and in addition, pleaded contributory negligence. These affirmative matters in the answer were traversed. Upon these issues the case was submitted to a jury for trial, with the result that plaintiff recovered a verdict and judgment for $2,150.00. The company appeals and seeks a reversal upon four grounds: First, because of error during the progress of the trial, in admitting incompetent evidence; second, because of the failure of the court, at the conclusion of the plaintiff's evidence, to peremptorily instruct the jury to find for it; third, because the instructions given by the court did not properly present the law of the case and were prejudicial to it; and fourth, because the verdict is grossly excessive.

In the outset, it may be stated that the evidence fails to show that appellee did anything which, in the least, contributed to bring about his injury, and this branch of the defense will be dismissed without further notice.

On the afternoon of July 26, 1911, while driving a car loaded with props, or timbers for propping, in said mine,

along what is known as the first right entry, a piece of slate, some four or five feet in length, three feet wide, and three or four inches in thickness at one end, tapering to a feather's edge at the other, fell from the roof and struck him upon the back, knocking him down in between the car and the mule in the center of the track. With the aid of two employes of the company, who were present at the time, the car, which had run partly over his body, which was lying in the center of the track between the car wheels, was pulled back off of or from over him; and he was taken outside of the mine, where it was found, upon examination, that there was a skinned place, the size of a man's hand, in the small of his back, and that he complained of considerable pain. The mine doctor examined and prescribed for him. No bones were broken. There is no question that the slate fell upon him, or that he sustained an injury which, for a time at least disabled him to such an extent that he was unable to work. The company concedes this, but insists that the injury was not a serious one; and that, if any recovery is justified, the sum awarded by the jury is grossly excessive.

Appellee rests his right to recover upon the theory that the company, some time prior to the accident, was advised that the roof in the right entry, for a considerable distance, was in a dangerous and unsafe condition, and should be propped up; that, although those in charge of the company knew this fact, they made no effort to prop it, but, on the contrary, with knowledge of the dangerous and unsafe condition of this entry, suffered employes of the company to continue to use it.

The company, for defense, relies upon the uncontradicted evidence of three of its employes to the effect that all of the entries to the mine, and particularly this entry where the accident occurred, were inspected daily, and had been inspected in the forenoon of the day upon which the accident happened; and that, upon such inspection, no evidence of the dangerous or unsafe condition of the roof, at that point, was discovered. These three witnesses testify that they not only examined this portion of the mine roof by looking at it but tapped upon it to ascertain if the slate was loose; that they saw nothing wrong with it; that, when tapped upon with a pick, it appeared to be solid; that to those experienced in mines, an unsafe condition of the roof thereof due to loose or detached slate, can readily be detected by tapping upon

it with a pick or other heavy instrument; and that, if the slate is loose or liable to fall, it has a drummy, hollow sound. The testimony of these witnesses shows that this is one of the most reliable tests known to miners in determining when the roof of a mine is safe. Without considering in detail the testimony, it may be said that the weight of the evidence as to the inspection of this mine is with appellant, but, under the well established rule, if there is any evidence from which the jury would be warranted in finding that the company had not used or exercised ordinary care to maintain this entry in a reasonably safe condition for the use of its employes, whose business required them to pass through it, the court properly refused to take the case from the jury. Upon this point, the witness, Stratton Campbell, testifies positively that this roof was, and had been for some time, in an unsafe and dangerous condition; and that he notified one of the men in charge of the mine of this fact, telling him that it should be propped: Other witnesses testify that the slate had been falling from the roof of this entry, from its mouth back some distance; and that this condition had existed for some time. If this condition did, in fact, exist, and the mine owners knew it and took no steps to remedy it, either by taking down the slate until it arched itself as it were and ceased falling, or by propping the roof, it cannot be said that they exercised ordinary care to make the place reasonably safe. With this evidence in the record, it cannot be said that there was no evidence, tending to show that the mine owners exercised that degree of care, which the law imposes upon them, to make this entry reasonably, safe for the ingress and egress of their employes whose duty required them to pass through it.

This brings us to the second ground of importance, relied upon for reversal, to-wit: that the damages awarded are excessive. Appellee was injured on July 26, 1911. His injury consisted of a bruised back, which gave him, according to his testimony, great pain, from that time up until the trial, five months later. He testifies that, on the day following his injury, when his bowels moved, he passed a lot of blood—as much as a pint— his kidneys refused to act, and the doctor in charge gave him medicine to relieve this trouble. This was the only medicine he took for the injury, and his further treatment consisted of rubbing his back with a liniment, pre-

scribed by his physician for that purpose. So far as appears in the record, he never passed any blood after the one time, and had no further kidney trouble after the day following the injury. According to the testimony of himself and father, he was laid up with his back from two to three weeks; then he was able to go about, though unable to return to work until the lapse of some eight or ten weeks after the accident, from which time on intermittently until the date of the trial, he worked as a miner in different mines of that locality. Before the injury, he was earning $1.80 to $1.85 a day. When he went back to work, after he had sufficiently recovered, he received as much or more for his labor. He worked in different mines as driver, digger and shoveler; and there is evidence tending to show that he worked as well after, as before, his injury. During a part of the time, in going to his work, he was required to walk up the mountain side a thousand or more feet each day; and, during a portion of the time, he rode on horseback three or four miles, in going to and from his work. Before the trial, he was treated by no one but the company's doctor, who visited him some four or five times. At the trial, he was, by order of court, examined by two physicians. They testify that he had recovered from any injury received; and that, from a very careful examination of him, they found no evidences of any injury whatever, save some scars on his back; that, although he flinched when they would touch the place of the injury and complain of the pain, they were satisfied he was shamming.

With the evidence in this condition, the jury was not warranted in finding that he was permanently injured; and, unless he was, the sum awarded was out of all proportion to the injury sustained. It may be conceded that he suffered from the bruises to his back, but, after the lapse of from two to three weeks, the pain was not so severe as to prevent him from going about, and, after the lapse of eight or ten weeks, he was sufficiently recovered, to be laboring in different capacities in the coal mines. With no broken bones and no ascertained permanent injury of any character, there is nothing in the record to justify or support the verdict. It may be that appellee was seriously and permanently injured. The doctors, who examined him, may have been mistaken in their diagnosis of his case, but, if so, appellee should have no trouble in finding some reputable physician to

show that they are mistaken, or that the tests, which these physicians applied, are not reliable and trustworthy. If, in fact, he has sustained a serious, permanent injury to his back, or to any of his vital organs, through the injury to his back, this injured condition will undoubtedly manifest itself so as to be detected by the physicians' skill. With the physicians all testifying that there was no evidence of permanent injury, we must hold that, for the disablement shown, $2,150.00 is grossly excessive.

As the case must be reversed, necessitating another trial, we notice some of the objections made to the court's ruling on the admission of evidence. In its effort to show that appellee's injury was not serious, appellent introduced evidence to the effect that, after the lapse of eight or ten weeks from the injury, appellee was again at work at his trade. Appellee, in response to the question why he went back to work, answered that he was compelled to do so to provide his family, which was in a destitute condition, with the necessities of life. Appellant objected to this answer, but the court refused to exclude it. The issue was not, why he labored, but, did he labor, or was he able to labor; and the evidence should have been confined to the issue.

Again, complaint is made that the court permitted the witnesses to testify as to the dangerous and unsafe condition of the roof of the mine in parts thereof, other than that in which the accident occurred. Ordinarily the evidence should have been confined to the condition of the roof in that part of the mine where appellee was injured, but, when appellant undertook to show that the mine was inspected daily by three competent men, appellee had a right to show, if he could, that such inspection was neither competent nor thorough. One way of doing this was by showing the faulty and defective condition of the roof of the mine in parts other than where the accident occurred. For this purpose the evidence was competent.

Other minor errors in the admission of evidence are complained of, but they are inconsequential and only such in character as will creep into the record in every hotly contested case, and are not likely to occur again.

Objection is made to the instructions. But, considered as a whole, they are without serious fault. As the case must be retried, the following minor corrections, in

instruction one, should be made. In the second line thereof, there should be inserted after the word "defendant," these words, "use ordinary care," so that said instruction will read, "it was the duty of the defendant to use ordinary care to provide, etc." There should be added, after the word "rock" in the tenth line thereof the words, "if there were any such;" and in the thirteenth line of said instruction, following the word "rock," the words "if any" should be added; and again, in the seventeenth line, following the word "rock" the words "if any" should be added. So much of instruction four, to-wit: "The defendant is not required by instruction No. 1 to furnish to plaintiff a safe place in which to work, or to do more in that respect than use ordinary care, to furnish to him a reasonably safe place in which to work, at the time and place he was injured" is covered by instruction No. 1, and should be omitted.

For the reasons indicated, the judgment is reversed and cause remanded for another trial consistent with this opinion.